CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

6/3/2019

JULIA C. DUDLEY, CLERK
BY:  s/ CARMEN AMOS
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | |
|---|---|
| **JUSTIN T.,**[1] | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil Action No. 6:18-CV-55** |
| | ) |
| **NANCY A. BERRYHILL, Acting** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff  Justin T. ("Justin") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him no longer disabled as of December 3, 2014, and therefore ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act").  42 U.S.C. §§ 401–433, 1381–1381f.  Justin alleges that the Administrative Law Judge ("ALJ") erred by failing to properly consider Justin's mental impairments, by improperly evaluating the medical evidence, by giving little weight to his treating neurosurgeon, and by improperly assessing his subjective allegations. I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Justin's Motion for Summary Judgment (Dkt. No. 12) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 19).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

support the Commissioner's conclusion that Justin was no longer disabled under the Act.[2]

Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  This standard of review requires the Court

to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t]

evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148,

1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial

evidence is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a

preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted).

"The threshold for  such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the

final decision of the Commissioner will be affirmed where substantial evidence supports the

decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

 Justin analyzes the substantial evidence standard under the mistaken belief that simply

identifying some evidence at odds with with the ALJ's ultimate opinion on disability establishes

that substantial evidence does not support the decision. This is too narrow an understanding of

substantial evidence. The ALJ does not have to address every piece of inconsistent evidence,

Smith v. Colvin, No. 1:12cv1247, 2015 WL 3505201, at * 7 (M.D.N.C. June 3, 2015); see also

Brittain v. Sullivan, 956 F.2d 1162 (4th Cir. 1992); rather, the ALJ must author an opinion which

shows how the evidence of record supports the decision made.

 Attacking whether substantial evidence exists requires more than simply identifying

medical records or statements that are inconsistent with the ALJ's findings.  A claimant must

show that the ALJ used an improper legal standard, did not consider a relevant portion of the

---

 [2] Under the Act, a claimant under the age of eighteen is considered "disabled" for purposes of eligibility for
SSI payments if he has "a medically determinable physical or mental impairment, which results in marked and
severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to
last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).

record, did not satisfy the duty of explanation, or the overwhelming weight of inconsistent evidence overcomes the very low substantial evidence standard. The Fourth Circuit has been clear that an ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Hart v. Colvin, No. 5:169cv32, 2016 WL 8943299, at *3 (N.D.W. Va. Sept. 14, 2016) (quoting Walls v. Barnhart, 296 F. 3d 287, 290 (4th Cir. 2002)).

## CLAIM HISTORY

Justin was found to be disabled beginning on April 1, 2008, due to an impairment that met Listing 11.18, which is now obsolete. R. 155–58. On December 3, 2014, the Social Security Administration ("SSA") determined that Justin was no longer disabled as of that date. R. 153. This determination was upheld on reconsideration. R. 179.  ALJ David Lewandowski held hearings to consider Justin's disability claim on June 1, 2016 and January 25, 2017.  R. 94–128, 129–52.  Counsel represented Justin at the hearing, which included testimony from Justin and vocational experts. Id.

On April 4, 2017, the ALJ entered his decision, analyzing Justin's claim under an eight-step evaluation process[3] and denying his claim for benefits. R. 49–79. The ALJ noted that the most recent favorable medical decision finding Justin disabled (called the "comparison point decision") was dated October 26, 2008. R. 51.  At that time, Justin's severe impairment was respiratory failure due to shunt infection, which was found to medically equal listing 11.18 for cerebral trauma. Id.  The ALJ determined that as of December 3, 2014, Justin suffered from the

---

[3] The eight-step process to evaluate Justin's continuing benefits claim requires the Commissioner to ask, in sequence, whether: (1) the claimant is engaging in substantial gainful activity; (2) the claimant has an impairment that meets or equals the requirements of a listed impairment; (3) the claimant has medically improved; (4) the medical improvement is related to the ability to work; (5) there is an exception to medical improvement that applies; (6) the claimant has current impairments in combination that are severe; (7) the claimant's residual functional capacity based on the current impairments and if he can perform past relevant work; and (8) whether other work exists that the claimant can perform, given his residual functional capacity and considering his age, education, and past work experience. 20 C.F.R. § 404.1594.

severe impairments of hydrocephalus status-post ventriculoperitoneal shunt; lumbar spine
degenerative disc disease status-post laminectomy; cervical strain; obesity; chronic obstructive
pulmonary disease; blind spot in left eye; hypertension; major depressive disorder; bipolar
disorder and anxiety disorder. Id.

    The ALJ determined that these impairments, either individually or in combination, did
not meet or medically equal a listed impairment. R. 52–55. The ALJ concluded that Justin
retained the residual functional capacity ("RFC") to perform a limited range of sedentary work.
R. 56. Specifically, the ALJ found that Justin can sit for one hour, stand for 30 minutes and walk
for 30 minutes; sit for a total of six hours in an eight-hour workday; stand or walk for a total of
two hours in an eight-hour workday; lift or carry up to 10 pounds frequently and 20 pounds
occasionally; frequently use foot controls with his right lower extremity; occasionally use foot
controls with his left lower extremity; never climb, balance or crawl; occasionally stoop, kneel or
crouch. Id.  The ALJ found that Justin should avoid exposure to industrial hazards, unprotected
heights, driving and loud noise. He can have occasional exposure to moving machinery,
humidity, wetness, pulmonary irritants, extreme temperatures and vibrations. The ALJ found that
Justin has no peripheral vision and requires a cane to ambulate. He found that Justin can
understand, remember and carry out simple instructions and perform simple tasks, with
occasional interaction with others. Id.

    The ALJ determined that Justin could not perform his past relevant work of garbage
collector or cemetery worker, but that he could perform jobs that exist in significant numbers in
the national economy, such as materials packer and sealer, inspector, sorter and tester or order
clerk. R. 77–78. Thus, the ALJ concluded that Justin was no longer disabled as of December 3,
2014. R. 79. Justin appealed the ALJ's decision and submitted additional records for

consideration. R. 8–45. On February 8, 2018, the Appeals Council denied his request for review, and this appeal followed. R. 1–4.

## ANALYSIS

Justin has a ventriculoperitoneal ("VP") shunt for treatment of a brain tumor discovered when he was eight years old. The shunt must be replaced every 8–11 years due to wear. He also has a blind spot in his left eye due to surgery in 1990 related to the brain tumor, and has no peripheral vision. Justin experienced an episode of meningitis associated with the VP shunt in 2008 and was in a coma for a prolonged period and required a feeding tube. R. 512–513.  Justin previously worked as a landscaper, cemetery worker and garbage collector from 2005 through 2008, but did not continue to work after his prolonged hospitalization in 2008. R. 57.

Justin testified at the administrative hearings that the shunt causes low pressure headaches and affects his balance and vision. He testified that he suffers from mid and low back pain, has constant numbness in his left leg, has difficulty focusing and concentrating and struggles with depression and anxiety.

On July 4, 2014, William Humphries, M.D., examined Justin and completed a medical consultant report. R. 512. Justin's chief complaint was low back pain, and he reported recent injections in his low back without significant pain relief. He reported that he could not walk more than a quarter mile on a good day on level ground without stopping due to back pain. Id. Upon examination, Dr. Humphries found that Justin was oriented, with normal speech, thought content, memory and intelligence.  R. 513. Dr. Humphries performed a physical examination and diagnosed diastolic hypertension, obesity, chronic lumbar strain with degenerative disc disease, postsurgical hydrocephalus with functioning VP shunt, and chronic cervical strain with possible degenerative joint disease. R. 514.  Dr. Humphries concluded that Justin would be limited to

sitting 6 hours in an 8-hour day, standing and walking 6 hours in an 8-hour day, lifting 20 pounds

occasionally and 10 pounds frequently, and occasional climbing, kneeling and crawling. R. 514.

The ALJ reviewed Dr. Humphries' opinion and gave it little weight, finding that it was

well supported by evidence available at the time of the assessment, but that later evidence

supports more restrictive functional limitations. R. 75.

On November 30, 2014, Marvin Gardner, Ph.D., interviewed Justin and completed a

psychology report. R. 524. Dr. Gardner performed a mental status exam and cognitive

functioning exam and diagnosed alcohol use disorder in early remission, cannabis use disorder in

early remission, moderate depressive disorder, and moderate anxiety disorder. R. 528. Dr.

Gardner considered Justin's prognosis to be limited because he cannot take psychotropic

medications due to the VP shunt. R. 529.  Dr. Gardner concluded that Justin can:

> Perform simple and repetitive work tasks and to maintain regular attendance in
> the workplace.  He is able to perform work activities on a consistent basis. … He
> is of normal intelligence and is able to perform work activities without special or
> additional supervision.  He is able to complete a normal workday or work week
> without interruptions resulting from his psychiatric condition.  He was able to
> accept all instructions given by this examiner and respond appropriately.  He is
> able to accept instructions from supervisors.  He is able to interact with coworkers
> and with the public with no more than a moderate impairment of social interaction
> due to irritability from his chronic pain.  He is able to deal with the usual stresses
> encountered in  competitive work with abstinence from substances from a
> psychological perspective.

Id.

The ALJ reviewed Dr. Gardner's opinion and gave it significant weight, noting that Dr.

Gardner thoroughly examined Justin and his mental assessment is consistent with his direct

observations of Justin. R. 75.  The ALJ specifically noted that Justin had moderately impaired

immediate recall and recent memory but normal long-term memory, could complete serial threes

in 30 seconds with no errors, and completed serial sevens in 45 seconds with two errors. Id. The

ALJ also noted that Justin's presentation during his assessment with Dr. Gardner was not drastically different from his presentation during other medical encounters. R. 76.

On December 2, 2014, Richard Luck, Ph.D., reviewed Justin's records and completed a Psychiatric Review Technique. R. 530. Dr. Luck found that Justin had moderate depressive disorder, moderate anxiety disorder, and alcohol use and cannabis use disorders in early remission. R. 531–38. Dr. Luck found that Justin had mild restrictions with activities of daily living, moderate limitations with maintaining social functioning, moderate limitation with maintaining concentration, persistence or pace, and no episodes of decompensation. R. 540.  Dr. Luck found that Justin was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. R. 544–45. Dr. Luck concluded that Justin had no more than mild limitations in all other areas of functioning. Dr. Luck concluded that though Justin does have "some limitations due to depression and anxiety issues, with abstinence form [sic] substance use, he would be expected to be capable of simple, repetitive work." R. 546.

On February 18, 2015, Julie Jennings, Ph.D., completed a Psychiatric Review Technique and reached the same conclusions as Dr. Luck. R. 663–79. The ALJ reviewed Drs. Luck and Jennings' opinions and gave  them significant weight, noting that they are consistent with the complete record through the date of the decision. R. 76.

On December 2, 2014, R.S. Kadian, M.D., reviewed the record and completed a Physical Residual Functional Capacity Assessment. R. 548. Dr. Kadian found that Justin was capable of lifting 20 pounds occasionally and 10 pounds frequently; standing, walking and sitting for 6

hours in an 8-hour workday; occasionally balancing, kneeling and crawling and limited reaching in all directions. R. 549–51. On February 18, 2015, William Rutherford, Jr. M.D., reviewed Justin's records and completed a Physical Residual Functional Capacity Assessment, with almost identical findings to those of Dr. Kadian's. R. 681.

The ALJ reviewed the assessments of Drs. Kadian and Rutherford and gave them little weight, finding them supported by the evidence available when they were completed, but that later evidence supports more restrictive exertional limitations. R. 75.

Justin underwent lumbar spine surgery on April 4, 2016, for a partial hemilaminectomy, medial facetectomy and foraminotomy at L5-S1 to decompress the S1 nerve root. R. 804. He was walking without assistance one day later and discharged home. R. 802–03.

On July 19, 2016, Justin's treating neurosurgeon, Edgar Weaver, M.D., completed a Medical Source Statement of Ability to Do Work-Related Activities. R. 829. Dr. Weaver did not complete the physical capacity evaluation portion noting, "I do not do physical capacity evaluations as I am not qualified.  Needs valid F[unctional] C[apacity] E[valuation]." R. 830. In the visual communicative limitations section, Dr. Weaver wrote, "Needs valid evaluation for visual communicative limitations by ophthalmologist." R. 832.  At the end of the form, Dr. Weaver wrote, "Note: patient is cognitively limited and visual field cuts.  He is not capable of maintaining regular employment in my opinion." R. 833.

The ALJ reviewed Dr. Weaver's opinion and gave it little weight, finding it "not well explained"  and that it "does not contain specific work-related limitations." R. 75.  The ALJ found Dr. Weaver's overarching conclusion that Justin is disabled not well supported because Dr. Weaver does not treat Justin for cognitive or visual complaints, which are the basis of his disabling opinion. Id. The ALJ noted that other evidence reflects that Justin can read very small

8

print, read ordinary newspaper or book print, read a computer screen, and determine differences

in shape and color of small objects. Justin can see with his right eye. The ALJ also noted that

mental status examinations showed "largely intact findings, without evidence of disabling

cognitive problems." Id.

On August 10, 2016, Dr. Humphries met with Justin a second time and completed a

medical consultant report. R. 834–35.  Justin complained of continuous neck pain and significant

upper and lower back pain with some numbness in his left lower extremity. R. 835. Justin

reported that he has been using a cane to ambulate since the April 2016 back surgery.  Id. Dr.

Humphries performed a physical assessment exam and determined that Justin can frequently lift

and carry up to 10 pounds and occasionally lift up to 20 pounds; sit for 1 hour in an 8-hour

workday; stand and walk for 6 hours in an 8-hour workday; frequently operate foot controls with

his right foot and occasionally with his left foot; never climb stairs, ramps, ladders or scaffolds;

never balance or crawl; and occasionally stoop, kneel, crouch. R. 841. Dr. Humphries found that

Justin's impairments would limit his vision such that he cannot avoid ordinary hazards in the

workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles. R. 841.  Dr.

Humphries concluded that Justin can never be around unprotected heights or operate a motor

vehicle and cannot walk a block at a reasonable pace on rough or uneven surfaces R. 842–43.

The ALJ reviewed Dr. Humphries' August 2016 opinion and gave it significant weight,

finding it based on a thorough examination of Justin and that the conclusions are "for the most

part, well supported and consistent with other contemporaneous evidence." R. 74.  The ALJ gave

less weight to Dr. Humphries' conclusion that Justin would be unable to avoid ordinary hazards

in the workplace, and his conclusion that Justin would be unable to walk a block at a reasonable

pace on rough or uneven surfaces. Id.  The ALJ found the visual limitation inconsistent with Dr.

Humphries' findings that Justin can read very small print, ordinary newspaper or books print, a computer screen and determine differences in shape and color of small objects. The ALJ noted that Justin can see out of his right eye, and that Dr. Humphries described Justin's vision as grossly normal on examination, except for a lateral visual field cut of the left eye. The ALJ found that the RFC accommodates Justin's visual problems including limiting exposure to industrial hazards, to the extent reasonably consistent with the objective medical evidence and other evidence. Id.

## **Mental Impairments**

### Concentration, Persistence or Pace

Justin asserts that the RFC limitations of simple, routine, repetitive work do not address his deficits in concentration, persistence or pace and that the ALJ's decision does not satisfy the assessment required by SSR 96-8P. Pl. Br. Summ. J. p. 30. Justin also asserts that the RFC does not address his ability to concentrate over a period of time, persist at tasks, or perform work at a particular pace over the course of a workday or workweek. Justin further argues that the ALJ failed to include his moderate limitations in concentration, persistence, or pace in the hypothetical to the vocational expert. Id. at 33.

SSR 96-8P[4] requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. 1996 WL 374184 (S.S.A. July 2, 1996); Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion,

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

I find that the ALJ's decision adequately explains why a restriction to carrying out simple instructions and performing simple tasks properly accommodates Justin's moderate limitation with concentration, persistence and pace.  In Mascio v. Colvin, the Fourth Circuit held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. at 638.  The court noted, however, that the ALJ may find that the concentration, persistence or pace limitation would not affect a claimant's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. 780 F.3d at 638; see also Hutton v. Colvin, No. 2:14-cv-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015). The court found error in Mascio because the ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate into a limitation in his RFC.

The Mascio decision does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace must always translate into a limitation in the RFC. Rather,

Mascio underscores the ALJ's duty of explanation to adequately review the evidence and explain the disability decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence or pace limitation does not affect the claimant's ability to perform simple, unskilled work. The ALJ has the responsibility to address the evidence of record that supports that conclusion and ensure that the hypothetical presented to the vocational expert includes all the limitations set forth in the RFC.

Here, substantial evidence supports the ALJ's decision that despite Justin's limitations in concentration, persistence, or pace, he can perform simple instructions and tasks. The ALJ found that Justin had moderate limitations with concentration, persistence or pace in step two of his decision. R. 54. The ALJ noted that this area of functioning concerns actions that demonstrate the ability to focus attention on work activities *and* stay on task at a sustained rate. Id. The ALJ noted the following:

> Here, the claimant has been diagnosed with mood and anxiety-related disorders, and it is reasonable to conclude that psychologically-based symptoms would interfere in this area to some extent.  In a field office interview on January 5, 2015, the claimant talked slowly, and his mother helped him answer questions.  On the other hand, treating providers did not document obvious cognitive problems or slow pace.  On the contrary, the claimant's attention span and ability to concentrate appeared normal.  In a psychological consultative examination on November 26, 2014, the claimant was able to complete serial threes in 30 seconds with no errors.  He completed serial sevens in 45 seconds with two errors.  Overall, the claimant has no worse than a moderate limitation with respect to concentrating, persisting or maintaining pace.

Id.  In step six of his decision, the ALJ noted that Justin complained of issues with concentration. R. 57. The ALJ reviewed Justin's medical records in detail and noted that his mental status examinations showed largely intact findings, apart from signs of depressed mood or blunted affect from time to time. R. 74.

The ALJ reviewed Drs. Gardner, Kadian and Jennings' opinions of Justin's mental functional capacity in detail and gave them all significant weight. R. 75–76.  Specifically, Dr. Gardner performed a mental status examination of Justin and determined that he can perform simple and repetitive work tasks and maintain regular attendance in the workplace. R. 529. Importantly, Dr. Gardner stated that Justin is "able to perform work activities on a consistent basis." Id.  Dr. Gardner also found that Justin can complete a normal workday or work week without interruptions resulting from his psychiatric condition. Id.

The ALJ reviewed Dr. Gardner's opinion and gave it significant weight, noting that Dr. Gardner thoroughly examined Justin and his mental assessment is consistent with his direct observations of Justin. R. 75.  The ALJ specifically noted that Justin had moderately impaired immediate recall and recent memory but normal long-term memory, could complete serial threes in 30 seconds with no errors, and completed serial sevens in 45 seconds with two errors. Id. The ALJ also noted that Justin's presentation during his assessment with Dr. Gardner was not drastically different from his presentation during other medical encounters. R. 76.

The ALJ also gave significant weight to the opinions of the state agency reviewing physicians that Justin is moderately limited in his ability to maintain attention and concentration for extended periods, but that he is capable of simple, repetitive work. R. 76, 544–46, 663–79.

During the administrative hearing, the ALJ presented a hypothetical question to the vocational expert of an individual who is capable of sedentary exertional work who can understand, remember and carry out simple instructions and perform simple tasks with occasional interaction with others. R. 147. The vocational expert testified that such an individual could perform jobs such as material packers and sealers, inspectors, sorters, testers and order clerks. R. 148.

The ALJ determined that Justin was capable of understanding, remembering and carrying out simple instructions and performing simple tasks, with occasional interaction with others. R. 56. The ALJ summarized his findings with regard to Justin's mental impairments, stating:

> The alleged mental impairments also do not appear as severe or as limiting as alleged by the claimant. The record documents little in the way of specialized treatment, and Dr. Oliver's notes do not contain findings indicative of disabling psychiatric conditions. Mental status examinations showed largely intact findings, apart from signs of depressed mood or blunted affect from time to time. The totality of the evidence shows that the claimant is able to understand, remember, and carry out simple instructions and perform simple tasks, with occasional interaction with others.

R. 73–74 (internal citations omitted).

Thus, unlike in Mascio, the court here is not left to guess at the ALJ's decision-making process. See St. Clair v. Colvin, No. 7:13cv571, 2015 WL 5310777, at * 7 (W.D. Va. Sept. 11, 2015) (ALJ properly relied upon the opinion of consultative physician that plaintiff's impairment in concentration, persistence and pace did not prevent him from performing simple, repetitive tasks); Del Vecchio v. Colvin, No. 1:43cv116, 2015 WL 5023857 at * 5 (W.D.N.C. Aug. 25, 2015) (ALJ's reliance upon the opinion of state agency medical consultant that plaintiff could complete simple tasks even with moderate limitations in concentration, persistence, or pace satisfied the explanation necessary to support the RFC limitations); Geisler v. Comm'r, No. SAG-14-2857, 2015 WL 4485459, at *5 (D. Md. July 21, 2015) (ALJ properly relied on the opinions of state agency physicians that plaintiff's impairment in concentration, persistence or pace does not prevent him from performing simple, spoken instructions and simple routine tasks). The ALJ relied upon the conclusions of Drs. Gardner, Kadian and Jennings that despite his moderate impairments in concentration, persistence or pace, Justin can perform simple, routine tasks consistently for an 8-hour workday. The ALJ discussed those opinions in his

14

decision and gave them great weight. R. 75–76.  The ALJ accommodated Justin's limitations by providing an RFC of "understand, remember, and carry out simple instructions and perform simple tasks, with occasional interaction with others," (R. 25), which he included in the hypothetical question given to the vocational expert. R. 147. Notably, no other treating, examining or reviewing physicians assessed more restrictive non-exertional limitations than those set forth in the RFC.

Justin asserts that "Dr. Gardner's conclusions regarding plaintiff's ability to perform work activities on a consistent basis is in error. Dr. Gardner did not address plaintiff's ability to maintain work activity on a sustained basis over the course of an eight-hour workday." Pl. Br. Summ. J. p. 33.  Justin offers no support for this allegation, which is directly contradicted by Dr. Gardner's psychology report, stating, "Justin T[.] is able to perform simple and repetitive work tasks and to maintain regular attendance in the workplace.  He is able to perform work activities on a consistent basis. He is able to complete a normal workday or work week without interruptions resulting from his psychiatric condition." R. 529.  Dr. Gardner's opinion states that Justin can perform work on a sustained basis over a normal workday, and the ALJ explained why he gave it significant weight.

Justin also asserts that Dr. Weaver's findings that he has memory issues and that his psychiatric prognosis is limited indicate that Dr. Gardner's opinion should not be given significant weight.[5] Justin's arguments amount to no more than disagreements with Dr. Gardner's findings and a request that the court re-weigh the evidence. Justin does not assert that

---

[5] Justin further asserts in his brief that his mental limitations would cause him to be off task more than 15% of every workday. See Pl. Br. Summ. J. p. 36 ("Due to his major depressive disorder, bipolar disorder, and anxiety disorder, the plaintiff would be off task more than 15% of every workday, would be absent at an unacceptable rate, and would not be able to sustain work activity").  The court spent significant time unsuccessfully attempting to find evidence in the record reflecting that Justin would be off task 15% of every workday. At the hearing on these motions, Justin's attorney indicated that the 15% off task figure was a compilation of how she views the records and was not based upon any medical or other finding in the record.

the ALJ failed to consider any treatment records or medical evidence in support of his claim. Justin does not identify any subjective complaints that the ALJ failed to consider. Nor does Justin identify specific instances in this case where the ALJ improperly applied the legal standards. Rather, Justin asks this court to re-evaluate his subjective allegations and come to a different conclusion from that of the ALJ. That is not the standard of a social security appeal. The issue before me is whether the ALJ applied correct legal standards and his factual findings are supported by substantial evidence. Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Having reviewed the record, I find that the ALJ's decision is supported by abundant evidence.

<u>Social Interaction</u>

Justin also asserts that the RFC accommodations of occasional interaction with others does not sufficiently accommodate his moderate limitation in social interaction. Pl. Br. Summ. J. p. 34. Justin does not indicate what additional restrictions would be more appropriate or cite any supporting evidence in the record, but simply states that the "ALJ did not explain how plaintiff's moderate limitation in interacting with others is accommodated by limiting plaintiff to occasional interaction with others." Pl. Br. Summ. J. p. 34.

In step two of the decision, the ALJ considered Justin's ability to interact with others and found that he had a moderate limitation, noting that Justin testified that he is short-tempered when in pain. R. 53. The ALJ noted that in his psychological consultative examination in November 2014, Justin had fair hygiene, intermittent eye contact, normal psychomotor activities, a friendly but reserved manner and a low smile frequency. Id. Justin's speech was responsive, his affect was blunted, and his attitude was cooperative. R. 54. The ALJ noted that Justin had poor grooming and appearance in a field office interview in 2015, but otherwise typically

16

presented to medical encounters with normal overall appearance and behavior, apart from a depressed mood or blunted affect at times. Id.

In step six of the decision, the ALJ noted Justin's testimony that he can get along with people if his pain is not too bad, but becomes short-tempered when in pain, and that his depression makes him want to self-isolate. R. 58.  The ALJ gave significant weight to Dr. Gardner's findings that Justin can perform work activities without special or additional supervision, he was able to accept all instructions from Dr. Gardner and respond appropriately; he is able to accept instructions from supervisors; and he is able to interact with coworkers and the public with nor more than a moderate impairment of social interaction due to irritability from his chronic pain.  R. 529.  The ALJ noted that Dr. Gardner thoroughly examined Justin and that his presentation on the day of Dr. Gardner's examination was not drastically different from his presentation during other medical encounters in terms of mental status.  The ALJ summarized his findings regarding Justin's mental impairments, stating, "[t]he totality of the evidence shows that the claimant is able to understand, remember, and carry out simple instructions and perform simple tasks, with occasional interaction with others."  R. 74. The ALJ also included that limitation in the hypothetical question posed to the vocational expert at the administrative hearing. R. 147. Accordingly, the ALJ's decision provides an explanation of his conclusion that Justin's limitations with social functioning are accommodated by a limitation to occasional interaction with others.

## **Physical Impairments**

### Vision Impairment

Justin asserts that the ALJ erred by giving less weight to Dr. Humphries' conclusion in his August 2016 opinion that Justin is unable to avoid ordinary hazards in the workplace due to

17

his visual limitations. Pl. Br. Summ. J. p. 39.  Justin asserts that the ALJ's limitation in the RFC to avoid industrial hazards is insufficient because it would not protect him from ordinary hazards in the workplace. Id.

Justin testified that he has a blind spot in his left eye, near the top of his field of vision, that causes difficulty with reading. R. 137–38.  He also has no peripheral vision. He stated that he will get a headache from eye strain after 30 minutes of reading. R. 58, 137–39.  Justin testified that he is "liable to bump into" things on his left side due to the blind spot and lack of peripheral vision. R. 144.

Justin's medical records reflect minimal complaints related to his vision or treatment for his vision. Dr. Humphries' July 4, 2014 opinion indicated that Justin's vision and hearing were grossly normal. R. 514. Justin counted fingers correctly with each eye at 14 inches, despite a left lateral visual field cut. Id.  On October 29, 2015, Justin saw an eye specialist for evaluation of floaters, flashers and possible blind spot in his left eye.  He was diagnosed with left eye optic nerve atrophy and given an updated glasses prescription. R. 748–49.  Dr. Humphries' August 2016 opinion noted that Justin's vision was grossly normal, aside from the left lateral visual field cut. R. 837.  However, Dr. Humphries determined that Justin is unable to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles. R. 841. Justin followed up with his eye doctor in January 2017, complaining that the blind spot in his left eye "seems larger." R. 964. The doctor noted possible diagnoses of old optic nerve atrophy versus glaucoma and advised him to return for optical coherence tomography and visual field testing. R. 965. There are no other records relating to treating of Justin's vision in the record.

As noted above, the ALJ gave significant weight to the majority of Dr. Humphries'
August 2016 opinion, but gave less weight to Dr. Humphries' finding that Justin is unable to
avoid ordinary work hazards. R. 74. The ALJ noted that the record documents two eye doctor
visits for evaluation of a reported blind spot in Justin's left eye, which was initially diagnosed as
optic nerve atrophy. R. 73. The ALJ further noted that Justin's alleged vision complaints are
otherwise not very prominent in the record, and that on several other occasions, Justin denied
change in vision or vision loss. See R. 73, 740, 777, 872.  The ALJ recognized that Dr.
Humphries described Justin's vision as grossly normal on examination, except for a lateral visual
field cut of the left eye. The ALJ noted that Justin acknowledged at the hearing that he retains the
ability to see somewhat out of the inside of his left eye and does not have a blind spot in his right
eye. Accordingly, the ALJ determined that Justin's vision complaints are fully accommodated by
a restriction to avoid industrial workplace hazards. Id.

The ALJ included an individual with no peripheral vision in the hypothetical question
provided to the vocational expert, and the vocational expert testified that the individual could
perform sedentary jobs such as material packers and sealers, inspectors, sorters and testers, and
order clerks. R. 147–48. Justin's counsel asked the vocational expert about jobs for an individual
who could not avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar,
approaching people or vehicles. R. 150. The vocational expert testified that at the sedentary level
of exertion, an individual would not be moving beyond the work station other than exiting and
entering the building and going to the bathroom, so ordinary hazards in the workplace would not
be a problem. R. 150. However, the vocational expert further testified that if an individual could
not avoid hazards while entering and exiting the workplace and using the bathroom, it would
exclude all competitive employment. Id.

19

Substantial evidence supports the ALJ's decision to give less weight to Dr. Humphries'

conclusion that Justin cannot avoid ordinary workplace hazards due to his visual impairments.

The regulations require an ALJ to evaluate a consultative examiner, such as Dr. Humphries,

using the factors outlined in the regulations and to expressly indicate and explain the weight he

or she accords to such opinions. See 20 C.F.R. §§ 404.1527(c), 416.927(c). The regulations also

require that the opinion of a consultative examining source should generally receive greater

weight than a non-examining source. 20 CFR §§ 404.1527(c)(1), 404.1527(c)(2); Taylor v.

Colvin, No. 7:13CV00536, 2014 WL 4385796, at *4 (W.D. Va. Sep. 4, 2014). In evaluating the

weight to give the opinion of a consulting examiner, the ALJ must consider various factors,

including the explanation and support for the opinion, as well as its consistency with the record

as a whole. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Here, the ALJ appropriately considered the factors in the record in determining the

weight to give to Dr. Humphries' opinion, and adequately explained why he gave most of Dr.

Humphries' conclusions significant weight, and two of his conclusions less weight. The ALJ

specifically considered the supportability and consistency of Dr. Humphries' findings, and

determined that his suggested limitation to avoid ordinary hazards in the workplace was not

supported by the record. R. 74.  The ALJ recognized that Justin suffers from visual impairments,

but noted that his vision remains grossly normal, and that he was able to read fine print, read

ordinary newspaper or book print, read a computer screen and determine differences in shape

and color of small objects.  R. 73. The ALJ concluded that Dr. Humphries' finding as to Justin's

need to avoid ordinary workplace hazards was not fully supported by the evidence and explained

the basis for that conclusion. R. 74. Thus, substantial evidence supports the ALJ's decision to

give that portion of Dr. Humphries' opinion less weight.

20

<u>Treating Physician Opinion</u>

Justin asserts that the ALJ erred by giving little weight to the opinion of his treating physician Dr. Weaver. Pl. Br. Summ. J. p. 41.  Dr. Weaver provided a medical source statement form on July 19, 2016; however, he did not complete any sections of the form. R. 829. Specifically, in the physical capacity evaluation portion he noted, "I do not do physical capacity evaluations as I am not qualified.  Needs valid F[unctional] C[apacity] E[valuation]." R. 830. In the visual communicative limitations section, Dr. Weaver wrote, "Needs valid evaluation for visual communicative limitations by ophthalmologist." R. 832.  At the end of the form, Dr. Weaver wrote, "Note: patient is cognitively limited and visual field cuts.  He is not capable of maintaining regular employment in my opinion." R. 833.

The ALJ reviewed Dr. Weaver's opinion and gave it little weight, finding it "not well explained"  and that it "does not contain specific work-related limitations." R. 75.  The ALJ found Dr. Weaver's overarching conclusion that Justin is disabled to be unsupported because Dr. Weaver does not treat Justin for cognitive or visual complaints, which are the basis of his disabling opinion. <u>Id.</u> The ALJ noted that other evidence reflects that Justin can read very small print, read ordinary newspaper or book print, read a computer screen, and determine differences in shape and color of small objects. Justin can also see with his right eye. The ALJ also noted that mental status examinations showed "largely intact findings, without evidence of disabling cognitive problems." <u>Id.</u>

Justin argues that Dr. Weaver's conclusion that Justin is "not capable of maintaining regular employment" (R. 833), is not a statement of disability that is reserved to the Commissioner but is instead an opinion regarding Justin's ability to sustain work activity. Pl. Br.

Summ. J. p. 42. Justin asserts that Dr. Weaver's conclusion should be given controlling weight and that the ALJ did not provide sufficient explanation to reject his opinion. Id.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."[6] 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W. Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)–(5), 416.927(c)(2)–(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010).

The Fourth Circuit reiterated in Monroe v. Colvin that an ALJ must "build an accurate and logical bridge from the evidence to his conclusion," and the failure to do so is grounds for remand. 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). "The failure of an ALJ to specify what treatment history or evidence does not

---

[6] The Court notes that for claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2P, have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a). However, the claim in the present case was filed before March 27, 2017, and the court has therefore analyzed Justin's claims pursuant to the treating physician rule set out above.

support a particular opinion means 'the analysis is incomplete and precludes meaningful

review.'" Knapp v. Colvin, No. 7:15-CV-348, 2016 WL 4447836, at *3 (W.D. Va. Aug. 1, 2016)

(quoting Monroe, 826 F.3d at 191), report and recommendation adopted, No. 7:15-CV-00348,

2016 WL 4482419 (W.D. Va. Aug. 23, 2016). Monroe confirms the ALJ's obligation to explain

the conclusions reached and identify the record evidence which supports those conclusions. Only

then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

Here, the ALJ gave good reasons for giving less weight to Dr. Weaver's opinion.  Dr.

Weaver was Justin's treating neurosurgeon and is familiar with his limitations and needs

regarding his VP shunt.  However, Dr. Weaver explicitly noted in his medical source statement

that he did not treat Justin for and is not qualified to provide an opinion on his physical capacity,

his visual communicative limitations, or his cognitive limitations. R. 829–33. Instead, Dr.

Weaver provided his opinion that Justin is not capable of maintaining regular employment, with

no support for or indication of the basis for his conclusion. The ALJ reviewed Justin's records in

detail, including his treatment with Dr. Weaver, and found that Dr. Weaver's conclusion that

Justin is unable to maintain regular employment is not supported by his records, nor is it

consistent with the other medical opinions in the record. R. 75. The ALJ provided reasoning for

giving Dr. Weaver's opinion less weight and established the required logical bridge from the

evidence to his conclusion.

Function-by-Function Analysis

Justin argues that the ALJ's RFC determination is not supported by substantial evidence

because the ALJ failed to conduct a function-by-function analysis. Specifically, Justin contends

that the ALJ failed to make specific findings as to his inability to maintain a static work posture

or his need to lie down during the day. Pl. Br. Summ. J. p. 40.

A function-by-function analysis requires the ALJ to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at *7.

 In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Justin likens this case to the ALJ's decision in Monroe v. Colvin, where the ALJ failed to sufficiently address the claimant's complaints of narcolepsy when developing the RFC. 826 F.3d at 188.  In Monroe, the claimant testified that he would lose consciousness about two or three

times per day and would need to take several breaks during the day because of fatigue. The ALJ found that Monroe's sleep apnea and narcolepsy were severe impairments, and he concluded that Monroe's impairments could reasonably be expected to cause his claimed symptoms. However, the ALJ failed to make specific findings about whether Monroe's sleep apnea or narcolepsy would cause him to experience episodes of loss of consciousness or fatigue necessitating breaks in work and if so, how often these events would occur. Rather, the ALJ simply concluded that Monroe was capable of light work and that Monroe's claimed symptoms were "not credible to the extent they are inconsistent with" the RFC the ALJ identified. Monroe, 826 F.3d at 188.

Here, Justin's difficulty maintaining a static work posture and his need to lie down were not severe impairments, but rather are complaints he made during the administrative hearing that the ALJ found unsupported by the record. The ALJ provided a detailed summary and analysis of Justin's impairments, medical records, testimony and opinion evidence. The ALJ discussed Justin's symptoms, his resulting limitations, the medical evidence, medical opinions, Justin's testimony, his credibility and conflicting medical evidence. R. 57–77.

The ALJ found that Justin's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medial evidence and other evidence in the record for reasons explained in this decision." R. 71.

The ALJ acknowledged Justin's complaints of back pain and his treatment history, including lumbar spine surgery on April 4, 2016. R. 72. The ALJ noted that post-surgery, Justin had no obvious deficits in his motor strength, sensation or reflexes. Id. Justin's gait was steady and non-antalgic. Id. After eight sessions of physical therapy, Justin had 4/5 lower extremity

strength, improved ability to walk and lift medium and light weights. However, Justin continued

to complain of back pain. The ALJ concluded that Justin,

> is limited to the sedentary level of exertion, with further exertional, postural, and
> environmental limitations.  The claimant's VP shunt, obesity, COPD also
> contribute to these limitations.  The above residual functional capacity
> accommodates the signs and symptoms to the extent they are consistent with the
> claimant's overall course of treatment.  However, further limitations are not
> appropriate considering the claimant's positive response to treatment, clinical
> presentation, and material inconsistencies between the claimant's testimony and
> reports to treating providers.

R. 73.  The ALJ reviewed the opinions of Drs. Humphries, Kadian, Rutherford, and gave great

weight to Dr. Humphries' suggested physical limitations. R. 74–75.  The ALJ noted that Drs.

Kadian and Rutherford suggested less restrictive limitations than those in the RFC and gave their

opinions less weight.

Substantial evidence supports the ALJ's conclusion that Justin's subjective complaints

regarding inability to maintain a static posture and need to lie down during the day do not require

additional limitations in the RFC beyond those recommended by Dr. Humphries. No other

physician in the record recommended more specific restrictive physical limitations than those

included in the RFC.  As noted above, an ALJ's narrative discussion of all the evidence in

support of his findings in determining a claimant's RFC is sufficient to comply with the

function-by-function analysis under SSR 96-8P.  Here, the ALJ fully discussed Justin's medical

evidence, his allegations regarding his symptoms and limitations, and the medical opinions in the

record. R. 57–77. This narrative discussion allows this Court to see how the evidence in the

record—both medical and nonmedical—supports the ALJ's RFC determination. The ALJ gave

Justin a carefully considered RFC, which is supported by Dr. Humphries' opinion, the only

examining doctor to provide a functional capacity opinion in the record. Thus, unlike in <u>Monroe</u>,

the ALJ gave a sufficient explanation of why Justin's complaints of inability to maintain a static

work posture and need to rest during the day did not translate into limitations in the RFC.   The

ALJ concluded that Justin retained the residual functional capacity to perform a range of

sedentary work in an "accurate and logical" way. Monroe, 826 F.3d at 189 (quoting Clifford, 227

F.3d at 863).

The ALJ is not required to make specific findings related to Justin's subjective assertions

that he must lie down during the day and is unable to maintain a static work posture. The ALJ

was only required to create a narrative discussion that builds "an accurate and logical bridge

from the evidence to his conclusion," which the ALJ did in his discussion of the medical and

non-medical evidence, Justin's alleged symptoms, and the medical opinions of record. Id.

Because I was not "left to guess" at how the ALJ reached his RFC determination, I find that the

ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

Assessment of Plaintiff's Allegations

Justin asserts that the ALJ does not provide reasons to reject his allegations that he cannot

sit or stand very long, must lie down during the day due to stabbing pain and numbness in his left

lower extremity, has trouble concentrating and remembering and has difficulty with others. Pl.

Br. Summ. J. p. 44.  Justin's argument in this section of his brief re-states his arguments in his

prior five allegations of error.  These issues have all been dealt with above.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step

analysis when considering a claimant's subjective statements about impairments and symptoms.

SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c),

416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that

could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b),

416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the

claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. (emphasis added).

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

Substantial evidence supports the ALJ's determinations regarding Justin's statements. The ALJ reviewed Justin's testimony in detail, along with the evidence of record. The ALJ stated:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

R. 71. Thereafter, the ALJ outlined his reasons for this determination in detail. R. 71–77. I reviewed the ALJ's findings on the issues of Justin's limitations with concentration, persistence or pace, social interaction, physical impairments, inability to maintain a static posture and need to lie down in the analysis set forth above, and I adopt those same findings here. The issue on

28

appeal is whether the ALJ's decision is supported by substantial evidence, and I find that

substantial evidence supports the ALJ's finding regarding Justin's statements.

<u>Additional Evidence</u>

As an alternative to his request that the court reverse the Commissioner's decision in this

case, Justin requests that the court remand this case to the Commissioner to consider new

evidence submitted to the Appeals Council after the ALJ's decision in this case. Pl. Br. Summ. J.

p. 46.

The additional records sent to the Appeals Council are dated February 23, 2017 through

July 20, 2017. R. 8–45. The records reflect that Justin followed up with Dr. Weaver on February

2017, complaining of leg pain. R. 10. Dr. Weaver noted that Justin was told that recent eye exam

results suggest the possibility of multiple sclerosis ("MS"). <u>Id.</u>  Justin continued to complain of

left leg pain, described as sciatica that radiates into the lateral aspect of his foot. R. 16. Justin

underwent an EMG study that was normal (R. 21), and had an evaluation for MS with

neurologist Sean Burke, M.D. R. 33.  Dr. Burke concluded, "I don't believe he has multiple

sclerosis (MS). The symptoms have been ongoing for years and there was nothing on the 2014

brain MRI to suggest demyelinating disease.  I think it more likely that pain, fatigue and

subjective weakness are sequelae of mood disorder…." R. 37. Dr. Burke referred Justin for an

evaluation of his depressed mood. R. 38.  On July 20, 2017, Dr. Weaver again stated his opinion

that Justin should be on disability, stating, "I am quite concerned that he cannot pass the memory

skills needed and the physical stamina with the other physical problems he has to really maintain

a full-time job.  I know Mr. Turner's history probably better than anyone, and I would fully

support his application for Disability." R. 26.

The Appeals Council denied Justin's request for review, stating that the medical records from Carilion Clinic Neurosurgery dated February 23, 2017 through July 20, 2017 did not show a reasonable probability that it would change the outcome of the decision. R. 2.  The Appeals Council further noted that the records from Carilion Clinic Neurology dated June 21, 2017 through July 20, 2017 do not relate to the period at issue. Id.

The "Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991) (internal quotations omitted). Beginning on January 17, 2017, a claimant seeking Appeals Council review based on additional evidence must also demonstrate good cause for not informing the agency about or submitting the evidence at an earlier stage. See 20 C.F.R. 404.970(b), 416.1470(b). Here, the ALJ's decision was issued in April 2017, thus Justin must also show good cause for not submitting these records to the Appeals Council.

Evidence is new if it is not duplicative or cumulative and evidence is material "if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins, 953 F.2d at 96. However, the Appeals Council need not review or consider new evidence that relates only to a period after the ALJ issues the decision. See 20 C.F.R. § 404.970. Additionally, the Appeals Council need not explain its reason for denying review of an ALJ's decision. Meyer v. Astrue, 662 F. 3d 700, 702, 706 (4th Cir. 2011) ("Although the regulatory scheme does not require the Appeals Council to articulate any findings when it considers new evidence and denies review, we are certainly mindful that 'an express analysis of the Appeals Council's determination would [be] helpful for purposes of judicial review.') (citation omitted); see also Riley v. Apfel,

30

88 F.Supp.2d 572, 579–80 (W.D. Va. 2000) ("When this court is left in the dark as to how the Appeals Council treated the new evidence a meaningful review is impossible."). When the Appeals Council denies review, this denial makes the ALJ's decision final, at which point, it is the decision of the ALJ, and not the procedural decision of the Appeals Council to deny review, that is subject to judicial scrutiny. See 20 C.F.R. §§ 404.967–981; Bowles v. Barnhart, 392 F. Supp. 2d 738, 742–43 (W.D. Va. 2005).

Justin does not provide any reasoning to the Appeals Council or in his briefing to the Court to support a finding of good cause for his failure to provide the records dated prior to April 2017 to the ALJ. Further, the additional records are not material because there is no reasonable probability that they would change the outcome of the decision. The additional records contain no new symptoms or diagnoses. Dr. Weaver's July 20, 2017 opinion is identical to his opinion in the record before the ALJ, and once again, fails to provide any specific functional limitations or any basis for his findings. R. 26. Likewise, although Justin saw a new specialist, Dr. Burke, he concluded that Justin's symptoms in June 2017 were not new, but have been "ongoing for years." R. 37. Dr. Burke further concluded that Justin did not have a new diagnosis, but instead suffered from depression. Id. Accordingly, the new evidence presented provides no reason for remand.

### CONCLUSION

For the foregoing reasons, I **RECOMMEND AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the Commissioner, **DENYING** Justin's motion for summary judgment and **DISMISSING** this case from the Court's docket.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of

record.  Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered:  June 3, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge