CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
9/27/2019
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JUSTIN T.,[1]<br><br>      *Plaintiff*,<br><br>v.<br><br>ANDREW M. SAUL, COMMISSIONER<br>OF SOCIAL SECURITY,[2]<br><br>      *Defendant*. | CASE NO. 6:18-cv-00055<br><br><u>MEMORANDUM OPINION</u><br><br>JUDGE NORMAN K. MOON |

  This matter is before the Court on the parties' motions for summary judgment (Dkt. 12, 19), the Report and Recommendation ("R&R") of Magistrate Judge Robert S. Ballou (Dkt. 24), and Plaintiff's objections to the R&R. (Dkt. 25). Pursuant to Standing Order 2011-17 and 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to Magistrate Judge Ballou for proposed findings of fact and a recommended disposition. Judge Ballou filed his R&R, advising this Court to deny Plaintiff's motion and grant the Commissioner's motion. (Dkt. 24). Plaintiff filed timely objections, obligating the Court to undertake a *de novo* review of the R&R. *See* 28 U.S.C. § 636(b)(1)(B); *Farmer v. McBride*, 177 F. App'x 327, 330 (4th Cir. 2006). Because the objections lack merit, the Court will adopt Judge Ballou's R&R in full.

---

 [1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts refer to claimants only by their first names and last initials.

 [2] Andrew M. Saul became Commissioner of Social Security in June 2019, Commissioner Saul is hereby substituted for the former Acting Commissioner, Nancy A. Berryhill, as the named defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

# I. STANDARD OF REVIEW

A district court's review of a magistrate judge's report and recommendation is undertaken *de novo*. *See* 28 U.S.C. § 636(b)(1)(C); *Farmer v. McBride*, 177 F. App'x 327, 330–31 (4th Cir. 2006). While the Court gives no deference to the magistrate judge's proposed findings and conclusions of law in the R&R, this Court must uphold the factual findings of the Administrative Law Judge ("ALJ") if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019); *Bird v. Comm'r of SSA*, 669 F.3d 337, 340 (4th Cir. 2012). Under this standard of review, the Court must "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." *Biestek*, 139 S. Ct. at 1154 (internal citations omitted). Substantial evidence requires more than a mere scintilla, but less than a preponderance, of evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). A finding is supported by substantial evidence if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Where "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. *Id*. A reviewing court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, even if the Court would have made contrary determinations of fact, it must nonetheless uphold the ALJ's decision,

so long as it is supported by substantial evidence. *See Whiten v. Finch*, 437 F.2d 73, 74 (4th Cir. 1971).

## II. ANALYSIS

Because Plaintiff does not object to the R&R's recitation of the factual background and claim history in this case, the Court incorporates those portions of the R&R into this opinion. (*See* R&R 3–5). By way of summary, Plaintiff was found to be disabled by the Social Security Administration ("SSA") on April 1, 2008 due to respiratory failure caused by shunt infection. R. 51. On December 3, 2014, the SSA determined Plaintiff was no longer disabled as of that date. R. 153. After this decision was upheld on reconsideration, R. 171–78, Plaintiff filed a request and appeared before Administrative Law Judge David Lewandowski (hereinafter "the ALJ") on June 1, 2016. (Dkt. 13 at 1 (citing R. 94–128)), and again on April 4, 2017 after receiving a consultative physical examination. *Id.* at 2 (citing R. 129–52). The ALJ determined that Plaintiff suffered from the following impairments: "hydrocephalus status-post ventriculoperitoneal shunt; lumbar spine degenerative disc disease status-post laminectomy; cervical strain; obesity; chronic obstructive pulmonary disease; blind spot in left eye; hypertension; major depressive disorder; bipolar disorder and anxiety disorder." (Dkt. 24 at 4 (citing R. 51). After determining that these impairments did not meet or medically equal a listed impairment, R. 52–55, the ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of sedentary work. R. 56.

In determining whether Plaintiff was disabled, the ALJ was required to work through an eight-step framework:

> The Commissioner is required to ask, in sequence, whether: (1) the claimant is engaging in substantial gainful activity; (2) the claimant has an impairment that meets or equals the requirements of a listed impairment; (3) the claimant has medically improved; (4) the medical improvement is related to the ability to work;

3

(5) there is an exception to medical improvement that applies; (6) the claimant has current impairments in combination that are severe; (7) the claimant's residual functional capacity based on the current impairments and if he can perform past relevant work; and (8) whether other work exists that the claimant can perform, given his residual functional capacity and considering his age, education, and past work experience.

20 C.F.R. § 404.1594. As detailed in the R&R, the ALJ concluded Plaintiff to be capable of the following limited range of sedentary work:

> [T]he ALJ found that [Plaintiff] can sit for one hour, stand for 30 minutes and walk for 30 minutes; sit for a total of six hours in an eight-hour workday; stand or walk for a total of two hours in an eight-hour workday; lift or carry up to 10 pounds frequently and 20 pounds occasionally; frequently use foot controls with his right lower extremity; occasionally use foot controls with his left lower extremity; never climb, balance or crawl; occasionally stoop, kneel or crouch. The ALJ found that [Plaintiff] should avoid exposure to industrial hazards, unprotected heights, driving and loud noise. He can have occasional exposure to moving machinery, humidity, wetness, pulmonary irritants, extreme temperatures and vibrations. The ALJ found that [Plaintiff] has no peripheral vision and requires a cane to ambulate. He found that Justin can understand, remember and carry out simple instructions and perform simple tasks, with occasional interaction with others.

(Dkt. 24 at 5) (internal citations omitted).

Plaintiff's sole objection to the R&R is that it errs in concluding that substantial evidence supports the ALJ's decision. (Dkt. 25 at 1). Plaintiff asserts that the R&R's conclusion errs with respect to several aspects of the ALJ's analysis and findings reached in the RFC; many of these errors were raised by Plaintiff's motion for summary judgment and rejected by Judge Ballou. The Court will address each of these alleged errors in turn. For both the reasons stated below and those ably expressed in Judge Ballou's R&R, Plaintiff's objections will be overruled.

1. *Moderate impairment in concentrating, persisting, and maintaining pace*

Plaintiff first objects to the R&R's conclusion that substantial evidence supports the ALJ's determination that Plaintiff's moderate impairment in concentrating, persisting, and maintaining pace was adequately accounted for in the RFC. (Dkt. 25 at 1). Plaintiff argues that there is a

4

logical gap left unexplained between the ALJ's finding that Plaintiff had moderate impairments in concentrating, persisting, and maintaining pace, and the ALJ's conclusion in the RFC that Plaintiff was able to follow simple instructions and perform simple tasks. (Dkt. 25 at 1–4) (citing *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015)). However, Judge Ballou correctly points to several instances in the record where the ALJ considered evidence of Plaintiff's ability to both perform tasks and stay on tasks, and the ALJ had subsequently determined that—despite Plaintiff's moderate impairment in concentrating, persisting, and maintaining pace—he is capable of following simple instructions and performing simple tasks throughout the work day. (Dkt. 24 at 14) ("The ALJ relied upon the conclusions of Drs. Gardner, Kadian and Jennings that despite his moderate impairments in concentration, persistence or pace, [Plaintiff] can perform simple, routine tasks consistently for an 8-hour workday."); *see also* R. 54. The ALJ also gave "significant weight" to Dr. Gardner who stated, after completing a psychological evaluation and report in 2014, that Plaintiff was capable of completing a normal workday or workweek. (Dkt. 24 at 13). Finally, contrary to Plaintiff's assertion, Judge Ballou explicitly examined how the ALJ's reasoning satisfied *Mascio*, (Dkt. 24 at 11–12; *see also id.* at 14 ("Thus, unlike in *Mascio*, the court here is not left to guess at the ALJ's decision-making process.")), and this Court similarly agrees that the ALJ's reasoning satisfied *Mascio*.

Importantly, the ALJ's conclusions here were the product of the ALJ weighing conflicting evidence and making credibility determinations as to varying medical evaluations. Reviewing the ALJ's decision for substantial evidence, I can neither reweigh this evidence nor can I make credibility determinations of this testimony on my own. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). After reviewing the record, I conclude that the ALJ's determination that Plaintiff is capable of carrying out simple instructions and performing simple tasks throughout a workday

5

despite his moderate limitations in maintaining, persisting and maintaining pace is supported by substantial evidence.

2. *Social interaction with others*

Plaintiff objects to the R&R's conclusion that the ALJ adequately explained why Plaintiff's moderate limitations in interacting with others do not result in limitations in the RFC findings. (Dkt. 25 at 3). Plaintiff states that the ALJ again failed to satisfy *Mascio*, 780 F.3d at 632, by not providing a sufficiently "detailed assessment by itemizing various functions." (Dkt. 25 at 4). Plaintiff cites *Panna v. Colvin*, 2015 WL 5714403 (W.D.N.C. Aug. 31, 2015) for the proposition that "the ALJ must explain why plaintiff's limitations in social functioning did not translate into work related limitations in the RFC findings." (Dkt. 25 at 3). However, the court in *Panna* found error when the ALJ failed to include "*any discussion*" on Plaintiff's limitation as to social functioning after finding no listed impairment was met. *Panna v. Colvin*, 2015 WL 5714403 at *3 (emphasis added). That is not the case here. The ALJ specifically discussed several pieces of evidence related to Plaintiff's ability to interact with others. This included the ALJ's discussion of his psychological consultative examination, which reported Plaintiff had "fair hygiene, intermittent eye contact, normal psychomotor activities, a friendly but reserved manner and a low smile frequency." (Dkt. 24 at 16 (citing R. 53)). The ALJ also included both his own observations, *id*. (citing R. 54), and the testimony of Plaintiff himself, *id*. (citing R. 58), in addition to giving significant weight to Dr. Gardner's testimony about interactions and observations of Plaintiff, *id*. (citing R. 529). And indeed, unlike *Panna*, the ALJ *does* include a limitation in Plaintiff's RFC after concluding Plaintiff has a moderate limitation in social functioning, stating that Plaintiff was capable of work with "occasional interaction with others." R. 56. The ALJ's analysis more than passes muster under the substantial evidence standard, even as construed by *Panna*.

*3. Back pain*

Plaintiff objects that the ALJ failed to make specific findings "as to whether or not plaintiff's impairments would cause him to experience episodes of pain or fatigue necessitating breaks or absences and how often they would occur as required" under *Monroe v. Colvin*, 826 F.3d 176 (4th Cir. 2016). (Dkt. 25 at 4). Plaintiff also states that the R&R "did not acknowledge the ALJ's reversible error in failing to address whether plaintiff would experience episodes of pain from his impairments resulting in breaks or absences, how often they would occur and their impact on plaintiff's ability to sustain work activity over the course of a normal workday or work week." (Dkt. 25 at 4).

These alleged errors are clearly unfounded. Contrary to Plaintiff's allegation that the ALJ failed to make specific findings "as to whether or not plaintiff's impairments would cause him to experience episodes of pain or fatigue necessitating breaks or absences and how often they would occur as required," (Dkt. 25 at 4), the ALJ devoted several pages of his decision to the impact of Plaintiff's 2016 lumbar spine surgery, the results of his physical therapy, the difficulties Plaintiff faces because of his VP shunt, obesity, and COPD pose, but decided against limitations because of Plaintiff's "positive response to treatment, clinical presentation, and material inconsistencies between the claimant's testimony and reports to treating providers." R. 72–73. Plaintiff's challenge to the ALJ's analysis of Plaintiff's back pain fares no better. Because the ALJ did not accept Plaintiff's allegations that he must take breaks and lie down at various points throughout the day, it was clearly unnecessary for the ALJ to address the effects of this accommodation on his pain level and work product.

Finally, Plaintiff alleges that both the ALJ and the R&R failed to square the ALJ's analysis with *Monroe*, but the R&R discussed that decision at length. And, reviewing the R&R's legal analysis *de novo*, the Court agrees that the facts of *Monroe* are distinguishable from the present case. Unlike the *Monroe* plaintiff's sleep apnea and narcolepsy, 826 F.3d at 188, Plaintiff's "difficulty maintaining a static work posture and his need to lie down were not severe impairments, but rather are complaints he made during the administrative hearing that the ALJ found unsupported by the record," (Dkt. 24 at 25).

*4. Visual impairments*

Plaintiff claims that "the R&R erred in concluding that there is substantial evidence which supports the ALJ's decision to give less weight to Dr. Humphries' conclusion that plaintiff cannot avoid ordinary workplace hazards due to his visual impairments, while simultaneous [*sic*] giving significant weight to all Dr. Humphries' other conclusions in his August 2016 opinion." (Dkt. 25 at 5–6). The argument that an ALJ must give equal weight to all of an examining doctor's conclusions is an interesting one, but it ultimately fails. As the R&R notes, the opinions of consultative examiners such as Dr. Humphries should "generally receive greater weight than a non-examining source." (Dkt. 24 at 20 (citing 20 CFR §§ 404.1527(c)(1), 404.1527(c)(2); *Taylor v. Colvin*, 2014 WL 4385796, at *4 (W.D. Va. Sep. 4, 2014)). However, the conclusions reached in such testimony must be considered alongside "the explanation and support for the opinion, as well as its consistency with the record as a whole." 20 C.F.R. §§ 404.1527(c), 416.927(c). Alongside Dr. Humphries's testimony were Plaintiff's medical records, which reflected "minimal complaints related to his vision or treatment for vision," (Dkt. 24 at 18); Plaintiff's acknowledgment at his hearing before the ALJ that he retains the ability to see fully out of his right eye, along with the ability to see somewhat out of the inside of his left eye, (Dkt. 24 at 19); and

Dr. Humphries's testimony in both July 2014 and August 2016 that Plaintiff's vision was "grossly normal." R. 514, 837. This and other evidence provided a significant basis to deviate from Dr. Humphries's conclusions on this specific issue. Upon a *de novo* review, the Court agrees with the R&R that the ALJ's decision here was supported by substantial evidence. *Id.* And given the analysis above and in the R&R, substantial evidence likewise supports the ALJ's determination that Plaintiff's "vision complaints are fully accommodated by a restriction to avoid industrial workplace hazards." *Id.*

5. *Assessment of Plaintiff's allegations of impairment*

Under the heading "Plaintiff's Subjective Allegations Of Impairment," Plaintiff does not appear to challenge the ALJ's (or the R&R's) treatment of his subjective allegations of impairment; rather, Plaintiff claims that the R&R erred in (1) "concluding substantial evidence supports the ALJ's assessment of the inconsistency in plaintiff's statements and erred in concluding substantial evidence supports the ALJ's determination that plaintiff is capable of performing work at the level stated in the ALJ's decision"; (2) not providing "an explanation as to how plaintiff can perform substantial gainful work activities on a sustained basis over the course of an eight hour work day"; and (3) not making "specific findings regarding the plaintiff's allegations that he cannot maintain a static work posture, inability to reach forward or overhead, difficulty being around others, cannot see ordinary hazards on the left side, and that he must lie down during the day." (Dkt. 25 at 7). Uncontrovertibly, Plaintiff merely repeats alleged errors stated earlier in his brief, which have each been individually addressed either above or in the R&R. The only error[3] not previously raised is Plaintiff's challenge to the ALJ's determination regarding

---

[3] Plaintiff also claims that the ALJ failed to make specific findings on Plaintiff's "inability to reach forward or overhead," but not only did the ALJ consider evidence in the form of medical opinions of Plaintiff's limited ability to reach upward or overhead, R. 549–51, 681, he determined

9

the "inconsistency of plaintiff's statements." *Id*. However, as the R&R correctly notes, a "reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions." (Dkt. 24 at 28 (citing *Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984))). Plaintiff merely repeats his complaint alleged in his summary judgment brief, which the R&R rebuts thoroughly. The Court declines Plaintiff's invitation to second-guess the ALJ's credibility determinations and assessment regarding Plaintiff's statements, and the Court adopts the R&R's reasoning on this issue in full:

> Substantial evidence supports the ALJ's determinations regarding Justin's statements. The ALJ reviewed Justin's testimony in detail, along with the evidence of record. The ALJ stated:
>
> "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."
>
> R. 71. Thereafter, the ALJ outlined his reasons for this determination in detail. R. 71–77. I reviewed the ALJ's findings on the issues of Justin's limitations with concentration, persistence or pace, social interaction, physical impairments, inability to maintain a static posture and need to lie down in the analysis set forth above, and I adopt those same findings here. The issue on
>
> appeal is whether the ALJ's decision is supported by substantial evidence, and I find that substantial evidence supports the ALJ's finding regarding Justin's statements.

(Dkt. 24 at 28).

---

that additional evidence supports even more restrictive exertional limitations than these medical opinions recommend, R. 75.

6. *Post-hearing evidence*

Lastly, Plaintiff objects to the R&R's conclusion that the Appeals Council was correct in declining to consider post-hearing evidence offered by Plaintiff. (Dkt. 25 at 8). Specifically, the R&R determined that the Appeals Council did not err in concluding that the Plaintiff failed to show a reasonable probability that the new evidence would change the outcome of the ALJ's decision. (Dkt. 25 at 5 (citing Dkt. 24 at 30)). As an alternative to reversal on the ALJ's findings, Plaintiff asked that the Court remand the case to the Commissioner with instructions to consider this new evidence. (Dkt. 24 at 29).

The new evidence at issue is medical records dated both before and after Plaintiff's hearings before the ALJ. The R&R recounts the events underlying these medical records:

> The records reflect that Justin followed up with Dr. Weaver on February 2017, complaining of leg pain. R. 10. Dr. Weaver noted that Justin was told that recent eye exam results suggest the possibility of multiple sclerosis ("MS"). *Id*. Justin continued to complain of left leg pain, described as sciatica that radiates into the lateral aspect of his foot. R. 16. Justin underwent an EMG study that was normal (R. 21), and had an evaluation for MS with neurologist Sean Burke, M.D. R. 33. Dr. Burke concluded, "I don't believe he has multiple sclerosis (MS). The symptoms have been ongoing for years and there was nothing on the 2014 brain MRI to suggest demyelinating disease. I think it more likely that pain, fatigue and subjective weakness are sequelae of mood disorder…." R. 37. Dr. Burke referred Justin for an evaluation of his depressed mood. R. 38. On July 20, 2017, Dr. Weaver again stated his opinion that Justin should be on disability, stating, "I am quite concerned that he cannot pass the memory skills needed and the physical stamina with the other physical problems he has to really maintain a full-time job. I know Mr. Turner's history probably better than anyone, and I would fully support his application for Disability." R. 26.

(Dkt. 24 at 29). Plaintiff claims that the Court should require the Commissioner to consider this new evidence because "the new evidence contains further confirmation of plaintiff's visual impairments and resulting functional limitations," which would be relevant because of the ALJ's determination as to the severity of Plaintiff's visual impairment. (Dkt. 25 at 8). Plaintiff also

11

claims that the evidence shows that his impairments are "more severe than appreciated by the ALJ in his decision." *Id*.

The Court may remand a case to the Commissioner for consideration of new evidence upon a finding that it is "material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). In this case, that means the Appeals Council should have considered the evidence if it was shown to be new, material, and relevant to the period on or before the date of the ALJ's decision. *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991) (internal citations omitted). With regard to records in existence at the time of Plaintiff's April 2017 ALJ hearing, Plaintiff must also show good cause for not submitting these records to the Appeals Council. 20 C.F.R. §§ 404.970(b), 416.1470(b).

Plaintiff makes no attempt to demonstrate good cause as to why he did not submit the medical records dating from February to April 2017, and so the Appeals Council appropriately denied his consideration. (Dkt. 13 at 46). While I disagree with the R&R that these new medical opinions contain "no new symptoms or diagnoses," I do agree that they were correctly denied. (Dkt. 24 at 31). Dr. Burke testified as to what he deemed new manifestations of Plaintiff's depression, but this evidence does not cast on the ALJ's RFC, which adequately accounted for Plaintiff's depression. R. 52–56. While Dr. Weaver's July 20, 2017 opinion is modestly more detailed than his 2016 opinion, it still falls far short of the specificity required to compel the Court to act upon it, especially in light of Dr. Weaver's past statements as to his lack of qualification to opine on most of Plaintiff's impairments. R. 829–32. This evidence likewise is not material and was properly denied by the Appeals Council.

## CONCLUSION

For the foregoing reasons, Plaintiff's objections to the R&R will be overruled and the Court will adopt Judge Ballou's R&R in full. The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record and to Judge Ballou.

An appropriate order will issue.

ENTERED this  27th  day of September, 2019.

*/s/ Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE